Munro, J.,
dissenting. — On the trial' below, the plaintiffs made out the following case.
That the only person who was in possession of that portion of the‘land which is in dispute, at the commencement of the suit, and which is designated on Surveyor Brunson’s plat, by the letters R, S, T and Q, was one Pinckney Gr. Benbow, a son of the defendant, who entered thereon in the fall of 1851, and has continued to occupy the same ever since, claiming to hold the land in his own right, and in defiance of the plaintiffs’ claim.
The only proof adduced upon the trial, that the defendant had at any period asserted a claim to the land was, that some time either in the year 1842 or 1843, he had put one Butler on the land as his tenant, which the latter continued to occupy for some six or seven years, when he finally abandoned it, which must have been, either in the year 1849, or 1850, one year at least before P. Gr. Benbow entered upon the land, and three years, at least, before the commencement of the present action: but from the time that Butler abandoned the possession of the premises, down to the trial of the case, there was not a title of proof that the defendant had ever put his foot upon the land, or had asserted any claim to it; and least of all, that he had either aided, assisted, or in the slightest degree encouraged his son, the present occupant, to take'possession of it.
Nor was there the slightest pretence that the action had been brought against the defendant for the trespass he committed in putting his tenant Butler in possession of the land: on the contrary, it was openly avowed by the plaintiffs’ counsel on 'circuit, and it is likewise manifest from their first ground of appeal, to which I shall refer hereafter, that the sole object of this action was, to render the defendant liable for the acts of his son Pinckney, who they alleged, had taken possession of the land as his father’s tenant, and not as a claimant in his own right; and it was upon the plaintiffs’ failure to establish such tenancy, or such a privity between the defendant and his son, *21 as would render the former liable for the acts of the latter, that the non-suit was granted ; and in confirmation of the fact, that this was the sole ground upon which the case was mude to rest, both upon the circuit and in the Appeal Court, I now refer to the plaintiffs’ first ground of appeal to set the non-suit aside: — it is as follows: “ The title of plaintiffs to the land covered by the grant to General Sumter, was fully and clearly proved. It was also proved, that the defendant who sets up claim to the land, put.his son P. G. Benbow, who. makes no claim thereto, in possession of a portion of the land covered by said grant; and this, it is respectfully submitted, was sufiicient proof of a trespass, and his Honor erred in holding the contrary.”
Prom the foregoing statement it is apparent then, that the only ground taken by the appellants, and calling for the judgment of the Court, was, whether there was error in the ruling on circuit in granting a nonsuit, upon the ground of the insufficiency of the plaintiffs’ proof, to connect the defendant with the alleged trespasses of his son.
Without adjudicating that point however, a majority of the Court has seen proper to grant the plaintiffs’ motion, and to rest its judgment upon an entirely different ground to the one relied on by the appellants, and which may be thus stated.
That although the plaintiffs may have failed to connect the defendant, with the alleged trespasses of his son, they are nevertheless ^permitted to abandon that ground, and to fall back upon the trespass committed by his tenant Butler, while he occupied the land, although the latter had abandoned possession of the premises, three years prior to the institution of the suit.
Conceding that the plaintiffs might have maintained ejectment against the defendant, at any time while his tenant, Butler, was in the occupation of the land; and that such action would have been the appropriate remedy for the redress of *22 such a wrong, will scarcely be doubted, — but having neglected to do so until after the termination of Butler’s tenancy by his abandonment of the possession, whatever wrong may have been committed by him while he occupied the premises, could only be regarded in legal contemplation, as a fugitive trespass, and proper to be redressed by an action of trespass quare clausum fregit, and not by action of trespass to try titles — so that the whole matter in controversy, is narrowed down to the single proposition, whether an action of trespass to try titles can be maintained against a party who is in possession of the premises at the commencement of the suit.
As the affirmative of this proposition is broadly maintained in the opinion of the majority, and as it professes to be based upon the authority of the case of Watson vs. Hill, 1 Strob. 78, a brief examination of that case is rendered indispensable.
The following summary of the facts of the case, will be found in the opinion of the Court, at page 81: “ The defendant lives on the extreme corner of a six thousand acre survey. The defendant lives upon a small grant lying in a distant portion of the survey, and which was according to law platted out in the survey accompanying the plaintiff’s grant. Near this place were the trespasses complained of. No one could tell whether the defendant, had or had not actually committed them under a belief of title. The legal presumption was, that, they had been committed under a title supposed by the defendant to be valid; and such turned out to be the fact. For when he was driven into his defence, he undertook to show, that he was tenant in common with the plaintiff.” O’Neal, J., in delivering the opinion of the Court, after stating the second ground in support of the motion, which was, whether trespass to try title by one in possession, against one who enters upon him, and commits a trespass, would lie, proceeded to say: “ In such case, I have always supposed, that the plaintiff had his choice, to bring trespass quare clausum fregit, or trespass to try title.”
*23 From the foregoing extract, comprising as it does, all the material facts in Watson vs. Hill, it is manifest, that the ruling of the majority derives no support whatever from that case, for so far from the cases being analogous, there is not a single feature, save the form of the action, in which the slightest resemblance between them can be traced; for in Watson vs. Hill, as we have seen, the defendant was not only in the possession of the land at the time the action was brought, but claimed to hold it as a tenant in common with the plaintiff. And the only question made in the case was, whether, because of the plaintiff’s being also in possession at the same time, he could maintain trespass to try titles. Whereas, in this case, the position of the parties at the commencement of the suit was directly the reverse; neither the plaintiff nor the defendant was in the occupation of the land, nor was the action commenced, until three years after the defendant had abandoned “the possession.
It is quite obvious then, that the only authority upon which the decision rests, is the extrajudicial dicta, to be found in that case, wherein it is attempted, arguendo, to sustain the doctrine, that there no longer exists any real distinction between the actions of trespass to try title, and trespass guare clausum fregit, inasmuch as the effect of the Act of 1791, in substituting the former action for the old action of ejectment, has been in a great measure to confound these two forms of action, and to render them concurrent remedies. For example, (at page 80,) in speaking of the action of trespass to try title, it is said, “ It is in form an action of trespass guare clausum fregit, the only matter which renders it different is the notice required to be given, that it was brought to try titles, as well as to recover damages, and that in it the plaintiff may have a writ of possession.” And again, after quoting the Act of 1791, and showing that in order to maintain the action, it is indispensable that some trespass must be proved, it goes on „to state, “ When this point was decided, it necessarily led to the conclusion, that a tres *24 pass was the assertion of a hostile right, and that it occupied in this action, the same place that the fictitious ouster did in the action of ejectment.”
If the conclusion which the learned author of this opinion has deduced from the provisions of the Act of 1791, be as is here stated, namely: that the only prerequisite to the maintenance of the action of trespass to try title is, that there should be a trespass, and that a mere trespass without an actual occupancy of the premises by the trespasser, is per se equivalent to an actual ouster of the owner, then I am constrained to say, with becoming deference to him, that such conclusion is neither sustained by the language of the section in question, nor by any one of the numerous judicial decisions in which its provisions have been drawn into controversy.
To determine this question, it becomes necessary in the first place to look to the distinction that existed at common law, between the actions of ejectment and trespass quare clausum fregit. And secondly, Whether by the Act of 1791, the old action of ejectment has been so far modified, mangled, or mutilated, as to be degraded down to a level with, and in all respects converted into a concurrent remedy with trespass quare clausum fregit.
There were certainly no two actions known to the common law, between which the line of severance was more broadly, and distinctly marked, than that which existed between these two forms of action. For while it was the exclusive province of the action of' ejectment to restore the owner of real estate to that possession from which he had been evicted by the wrongful-act of another ; still, as merely nominal damages were accorded to the plaintiff in this form of action, it became necessary to invoke the aid of another action, to enable the plaintiff to recover in the form of damages, such mesne profits as had accrued during the time the possession was withheld from him by his adversary. It was for this purpose then that the agency of trespass quare clausum fregit vas called into requisi *25 tion; and in this way it was, that it became associated with the action of ejectment, while its other, and only remaining function was, the recovery of damages for such injuries as might be done to the occupant’s possession, by a mere transient or fugitive trespass.
Chitty in treating of the action of ejectment in the first volume of his work on Pleadings, page 186, says: — “ This action is only sustainable for what in fact, and in point of law amounted to an ouster, or dispossession of the lessor of the plaintiff; and it is necessary .that the possession should be adverse, or illegal at the time of the supposed demise laid in the declaration of ejectment; for, if there be no ouster, or if the defendant be not in possession at the time of bringing the action, it will fail.
“ To sustain an ejectment, it must appear, that the defendant was in the possession of the premises when the action was brought,” 7 Black. p. 12. Authorities to the same effect might be multiplied to an almost indefinite extent, l¡ut I deem it unnecessary to do so, in order to sustain a proposition so plain and obvious, that to sustain ejectment at the common law, an adverse occupancy of the premises, either by the defendant in person, or by his tenants, was indispensable to its maintenance.
Having thus seen what were the appropriate functions of these two forms of action as they stood at common law, let us now see what change has been effected in the action of ejectment, by the 4th Section of the Act of 1791, 5 Stat. 170 — it is as follows“ That the method of trying titles to lands, or tenements within this State, shall be henceforward by aqtion of trespass, wherein the real names of the plaintiff and defendant shall be used, and not fictitious names; and, if the jury shall find for the plaintiff, they are also empowered in the same verdict to award damages for mesne profits, and the judgment should be entered on such verdict, as well for the damages, as for the recovery of the land, and the plaintiff in such judgment, ' *26 shall be entitled to a writ of possession for the lands, and an execution for his damages.”
The only change then that was effected by the Act of 1791, in the common law method of trying titles to land, was in the following particulars: — 1. The title of the action was changed from ejectment to trespass, to try titles; and instead of the fictitious names employed in the former action, the real names of the plaintiff and the defendant are required to be used.' 2. The jury are empowered to award in their verdict whatever mesne profits may have accrued; and lastly, the plaintiff in addition to his writ of possession, shall also have an execution for his damages. In all other respects, the action remains as it did at common law; and in confirmation of this, I refer to the judicial construction given to the above clause of the act in the case of Kennedy vs. Campbell, (2 Tread. Con. R., 760.) Where Nott, J., in delivering the opinion of the Court, remarks: — “ Our Act of Assembly, substituting the action of trespass, for the old action of ejectment, merely adopts a new mode of proceeding, but does not alter any of the principles of law relating to it. It would be productive of the most mischievous consequences, if a contrary construction should be given to it.” But again, ejectment, it is said, is a remedy for an injury to the title to real estate, while trespass quar e clausum fr eg it, is a remedy for an injury to the possession alone, (Amick vs. Fraser, Dudley, 340,) so that, to maintain the former action, actual possession of the premises by the defendant at the time the action is brought, is indispensable. While to maintain the latter action, possession by the plaintiff, either actual, or constructive, is equally indispensable; but, if the defendant be in the actual possession, .the latter action will not lie, and trespass to try title is the only remedy, for, as is said on Amick vs. Fraser, supra — “ It would be a solecism to say, that one can have a constructive possession of that which is in the actual possession of another — ” to the same point, see Pearson vs. Dansby & Nelson, 2 Hill, 466, and Vance & Wife vs. Beatty, 4 Rich. 106. So that, here we have one *27 case at least, in which, these remedies are not concurrent, and where a plaintiff has not the right to choose between these two forms of action.
Now there is but one way in which an injury can he done to the title to real estate, and that is, by an actual and continuous possession of the premises by another; such a possession as will amount to a disseizen of the owner, and which, if not interrupted, will mature in the disseizor; a title under the Statute of Limitations — and, as to what should constitute the evidence of that possession, which will defeat a title to land, our own cases are not less abundant, than they are uniform — for example, in Hill vs. Saunders, (6 Rich. 66,) it is said: — “The beginning, or root of adverse possession is the disseizen of the grantee — ” and again, at page 67, “ Whatever definition we may adopt of adverse possession, (and a full and complete one seems to have been suggested in Hawk vs. Senseman, 6 S. & R. 21, to wit, that it must be an actual, visible, continued, notorious, distinct and hostile possession,) it is manifest, that merely running round boundaries, though a trespass, is not adverse possession — it is not disseizen — ” and at page 65, in noticing the distinction between the bar of the Statute when applied to personal actions, and when interposed to defeat a title to land, Judge Withers goes on to stateBut, when the statutory period is interposed to defeat a title to land, put in action, it would be vain for a defendant to content himself with showing no more than that his act of adverse possession began at a point of time more than five, seven or ten years, as the case might be. He must show, moreover, that such adverse possession has been continued, consecutive, unbroken, for the requisite space of time, a period reckoned by years. It is something done by the defendant, not merely that which the plaintiff has left undone — Lis action, not merely the plaintiff’s torpidity — that is to be considered. It is a certain sort of possession by him, for a certain number of years, of another man’s land that is to ‘ settle’ his 1 title to the possession in his estate,’ according to the words of the Act of 1712.”
*28 And in Slice vs. Derric, (2 Rich. 629,) O’Neall, J., in delivering the opinion of the court, says, “There is no case where a title has been defeated by any trespass not amounting to an actual pedis possessio within its limits for the statutory period. Cutting timber, marking trees, and making an entry as by a survey, do not of themselves constitute such a possession as will bar the owner’s title. They are too fugitive and uncertain to have such an effect.”
To the same point, is the case of Baily vs. Irby, 2 N. & McC. 343; where Johnson, J., in speaking of the kind of possession that will defeat a title under the statute of limitations, remarks, “ I am of opinion, that a repetition of trespasses ad infinitum are but trespasses still, and is not such a possession as would bar the plaintiff’s right to recover.”
The principle to be deduced from the foregoing authorities, I take to be this, that to constitute an injury affecting the title to land, there must be a disseizen, or ouster of the owner, not a mere trespass only, as is stated in Watson vs. Hill, and to constitute such disseizen or ouster, there must be such an adverse possession on the part of the disseizor, which, if not interrupted during the statutory period, will ripen his tortious occupation into an indefeasible 'right. That until the expiration of the statutory period, every moment of time that the disseizor is in possession, he is a tort-feasor, and is liable to be expelled by the owner, and that the only remedy which the law has provided for his expulsion, is an action of trespass to try title. See Amick vs. Frazer, and Vance & Wife vs. Beatty, supra.
But if on the other hand such disseizor should see proper voluntarily to abandon the land before his title has become perfected under the statute, and before action brought by the owner, his previous tortious occupation is eo instanti divested of its character of a disseizen, and in contemplation of law stands upon the footing of a casual trespass, such as the cutting of timber, &c., and for the redress of which trespass quare *29 clausum, fregit is the exclusive remedy. The case in hand furnishes an apt illustration of the principles adjudged in the foregoing cases. Luring the period while Butler, the tenant, occupied the land, the only action which the plaintiffs could have maintained, either against such tenant or the defendant, his landlord would have been trespass to try title; and why ? the answer is furnished by the cases of Amick vs. Frazer, and Vance vs. Beatty. In the last mentioned case, which, by the way, was decided four years subsequent to Watson vs. Hill, it is said, “For a casual trespass, one resting on his title alone, may maintain this action, because trespassers of this description acquire no possession, and have nothing to oppose.” But when the defendant is in the actual possession, the case is different; for as is said in Amick vs. Frazer, it would be “ a solicism to to say, that one can have a constructive possession of that which is in the actual possession of another.” In this contest between actual and constructive possession, the latter has always been made to yield, or as was said in the recent case of McColman vs. Wilks, 3 Strob. 465, “ it is always displaced by an actual possession.”
Now, as Butler’s actual possession of the premises formed the only obstacle in the way of the plaintiffs’ right to maintain trespass quare clausum fregit; the moment, however, that he . abandoned the possession, that obstacle was removed, and,, the plaintiffs’ constructive possession which had been “ displaced by his, the tenant’s, actual possession,” became restored, and along with it, the consequent right to maintain that form of action.
But again, suppose the defendant’s tenant, instead of remaining six years upon the land, had only remained the same number of months, or weeks, for the length of time can make no difference whatever in‘the application of the principle, it will hardly be pretended that the present form of action could have been maintained.
That the plaintiffs must recover a verdict against this defend-, *30 ant, does not admit of a doubt, let us then look to the form of the judgment which the statute authorizes a plaintiff, in this form of action, to enter up, as also to the nature of the process by which such judgment is to be enforced. The words of the statute are as follows, “ The judgment shall be entered on such verdict, as well for the damages, as for the recovery of the land; and the plaintiff on such judgment, shall be entitled to a writ of possession for the land, and an execution for damages.”
To enter up a judgment for the recovery of the land, and to invoke the aid of the potent habere facias- possessionem, the inseparable adjunct of the venerable ejectment, in order to eject from the premises a defendant, who had voluntarily abandoned possession of thedand, three years previous to the commencement of the action, is, to say the very least of-it, so palpable an incongruity, that it can hardly be said to comport with the dignity of a science, claiming to be, “ the perfection of human reason.” In the case of Pearson vs. Dansby & Nelson, already referred to, and which in several respects resembles the present, it was said by Johnson, J., “ There is always great disinclination on the part of the court to turn a plaintiff round to commence a new course of litigation when the right of the cause is apparently with him, but there is an absolute necessity for preserving the boundaries which the practice of the court has .prescribed in the forms of action for the various injuries to which a man is subject in his property, person or reputation. Arbitrary as they may have been in the first instance, many legislative enactments have been made in reference to them, and so have been the rules of practice established by the courts, and a departure from them would lead to inextricable confusion.”
I am of opinion, therefore, that the plaintiffs’ motion ought not to prevail.
Whitner, J., concurred.

Motion granted.